May it please the Court, Armin Skolmansky for Petitioners, Karim and his wife. This Court should grant Petitioners Petition for Abuse since the BIA abused its discretion in not reopening proceedings based on changed country conditions, changed circumstances. Because? Because? Well, in this case, what makes this case different than the previous case that Petitioners had is that here it talks about the Indonesian government almost abdicating its responsibility to the radical Muslims. And we do list on our brief, and the record shows page 48 and page 106, 107, is that over the years, there's been a decentralized centralization of the power. They've given it to these small cities that have established Sharia law. They also have an increased form of radical Islam that's taking over, politically speaking. There's one famous council of the Ulmas who basically, even during Suharto's time, was around. They were there just to control the Muslim teachings. Now, they have actually become a lot more radicalized influence in the government. And I appreciate your argument, and you don't have a lot of time, so I'm just going to cut in a little bit right here. It seems to me that since SAIL, 386 Fed Third, we've really recognized ethnic Chinese and Indonesia are a disfavored group. We've really said that. And then I read the 2008 country report, and it says, and it's in the record, instances of discrimination and harassment of ethnic Chinese continue to decline compared with previous years, especially since the passage of the 2006 citizenship law, which made it easier for ethnic Chinese to become citizens. So if I look at what we have here, and I look at the country report, which is the 2008 country report, I'm having a tough time seeing how I can really say, based on general conditions, that there's been a change of conditions. I mean, frankly, my biggest worry is that the BIA doesn't discuss the declaration about its individual circumstances, which I'm going to talk to the government about. But as to the general conditions, which it seems to me our last case law deals with, it isn't like it at all. The country report says it's decreasing, very much decreasing since 2006. Yeah, and I mean, petitioner's previous case, I mean, was similar in the sense that, you know, but there was more like of an issue with the Muslims, like in his community and problems with that. But I agree. I mean, it's still, and as SAIL says, I mean, it waxes and wanes. I mean, you have moments where, like, for example, and now they allow, you know, the Chinese New Year celebration, which wasn't allowed 10 years ago. But many people say, well, that's just window dressing. They're just, you know, want to show the world that, yeah, we have some, you know, Chinese holiday we celebrate. We allowed some Chinese schools. We even got some Chinese general, ethnic Chinese general in the army. But in reality, you know, it's not that way for the common person, as well as for Christians. You know, in this case, once again, it's, you know, he's saying here that the changes are the government's actually, you know, becoming more radicalized through the influence of these radical Muslim groups. You know, it's a democracy now. I mean, basically they have to cater to these groups to get power or keep power. And that's what they're doing here. And that's a change. Before it was one guy, one Suharto, the general. He was in control. He said whatever he wanted to say. This democracy actually might have changed that. And that's what we're saying is the change circumstances. Let me ask you this. I appreciate that you've argued all this about the national conditions all the way through. Did you ever exhaust before the government, before the BIE, either in your brief or anyplace else, what statements in the declaration supported the allegations of change circumstances? Well, as the court knows, I mean, when the motion to reopen exists, I mean, in this situation, motion to reopen based on change circumstances, it's about country conditions. It's not personal circumstances. The personal circumstances involve only individualized harm. So it's a different statute than if you're in court. Like the other previous case was where, you know, you have personal situation, personal circumstances. In this motion to reopen, personal circumstances do not necessarily apply. It's country conditions. However, the court, as in Malte suggests, you could look at some of the personal circumstances to see if there's individualized harm. We did say in the brief, we said that, you know, this is based on the new evidence the petitioner has. They would suffer future persecution. You know, it's a one-page declaration that the BIA refers to. So you're suggesting that in this particular situation, the individual circumstances do not apply? Is that what you're saying? The individual circumstances, they are different than with a motion to reopen, a brand-new case. They don't apply as they do when they're in court or when they have their asylum pending. So it's mainly a changed circumstance and country conditions. However, you could look at the personal circumstances to see if there's any kind of individualized harm. And that's what he said here. Well, my sons were attacked or, you know, they were robbed or, you know, we have some problems. My brother is being extorted. You know, that's in his one-page declaration he has. And that's the new evidence he has from Indonesia. And that's something that he would consider to be, you know, his personal situation. But, I mean, according to the statute, mainly the basis must be on changed country conditions and the evidence must be material. And normally it's not personal circumstances. Do you have any? I do. I want to follow up because I thought in the motion to reopen, the Petitioner argued that he was offering additional evidence in the form of a declaration and materials, and that in light of that evidence, he can establish that he had a reasonable likelihood of meeting the statutory requirements demonstrating well-founded fear of persecution. So that was that issue was raised, wasn't it, in the motion? Right. It was raised. And many times the BIA, if there's nothing personal in a motion to reopen, they'll say, well, you know, nothing's changed, and plus, you know, nothing will happen to you anyway. And, you know, all he has to show, actually, is that there's a reasonable possibility that he would be eligible for relief. And in this situation, yeah, I mean, he did say that, well, you know, by the way, I contacted my siblings and my son, and that they did say that there were some problems. And that goes to this. But whether or not that's persecution, I believe that's something, you know, it would be decided by the immigration judge, I believe, because it's only one sentence. Well, he got robbed or they got extorted. You know, it's hard to say that's past persecution, that's future persecution. But I think that is there a reasonable possibility that he would be eligible for? I guess we believe that. And I think if it went back to the judge, they could look at that. They could ask him on the stand, or they could say, could you please explain in more detail? There could be more evidence submitted later on, you know, whether or not what happened to his kids is persecution. So it seems to me what you're really saying to me, if I understand it, is your motion to reopen and your brief to the BIA really need not address the declaration itself? No, it needs to address the brief. I mean, it seems to me that one can prove these changed circumstances either by the country conditions themselves, which is where our latest case went, or by individual circumstances. And yet it doesn't seem to me that anything in the motion or the brief talked about the individual circumstances at all. Well, the motion, once again, maybe it wasn't specific, but in a broad sense, it talks about the change, talks about the introduced evidence regarding recent events in Indonesia, personal event, as which confirmed respondents fear that they would have persecution in the future  Also talks about circumstances have changed sufficiently so that respondents, personally, will now suffer persecution. It is clear from the evidence that respondents would be persecuted if they were to return to Indonesia. That's all based on, you know, the one-and-a-half page declaration that respondent Sorry, Petitioner. Thank you. And to the court. I do have one follow-up question, though. The declaration lists a series of events, and many of the events other than the two attacks on his son had dates. Was there any evidence presented to the BAA as to when these events transpired? Were they events that were considered already in the prior case? Well, there's a letter from the son, and it's dated July 15, 2009, and he talks about April 27. So the son's letter was not clear, but it's assumed that it happened that year, 2009. So that is assumed. What about the other events? When did they occur? The brother writes a letter. Actually, the brother actually says that the son was beaten. He mentions the date, 2009. The other events, once again, they date the letter, but they're not specific. And I think that's something, unfortunately, you know, they're not here to testify or in the United States itself, and they write a letter and they say what happened, and they weren't as clear as they could have been. Okay. Does that answer your question? Thank you. Counselor, we'll hear from the government. Good morning, Your Honor. Anthony Norwood for the government this morning. I want to point out that just to start, and obviously the Court is aware of this, this is a motion to reopen, and this Court has already affirmed that this petitioner did not establish a claim for asylum. Now, addressing the Court's questions about individualized risk, the petitioner did argue in his brief to this Court that there was an error of law because the Board of Immigration Appeals, according to the petitioner, did not pay enough attention to the individualized incidents that he claimed occurred in 2009. From my reading of the record, there's one incident that occurred on April 27, 2009. That was his son, Sunni, who claims that he was robbed. We don't know, we don't really know what the basis of that incident was, that it was persecution or that it was simply a robbery, which is. . . that because the BIA did not discuss that declaration and the events therein, that I should remand that it's abuse of discretion. That's the way I read the argument, but it doesn't seem that was the argument. It doesn't seem that was the argument today. That was the argument that was just made. But I submit that the BIA went further into the record than the petitioner's motion to reopen. Well, but you wouldn't disagree with me that the BIA went right through and said what it looked at and what the documents were that were important, and the declaration is not there. Well, the BIA mentioned an incident. It didn't specifically say Sunni's letter. But the BIA does mention that an incident occurs. And I. . . But in the letter, I think the letter and the declaration mention two incidents and the BIA only mentioned one. Doesn't that suggest that the BIA didn't consider the declaration? No, Your Honor. I think. . . Because the other incidents are also mentioned in letters that are not in that particular. But the other. . . There's one specific instance. The other instance are vague, as noted this morning by Petitioner. It's our argument that if you look at the totality of this, the Board did look at the record. We have to assume. We give definite. . . The Board. . . Often when I read the Board, they say we've considered all the evidence, and we now make this determination. And we have some case law that would say when you make that general declaration, that's enough. But they didn't even say that here. But they do refer to it. They do refer to an incident. It's not the strongest Board decision. It's specifically laying out incidents. But I. . . But I point out to you, my argument to you is that Petitioner's claim is not strong. There's. . . The motion to reopen says incidents. The motion to reopen does not. . . Does not. . . The motion itself does not say what incident. You look at the. . . You look at the. . . You have to look at the SUNY's letter and what's below that to see the robbery on April 27th. And then you go even deeper into it to see what's alleged to have happened to the other son on the way to school and the protection schemes that his brothers talk about. Well, my worry is that I can go through here, and they have some evidence in their opinion, that is the country reports. They have evidence in their opinion, which is the letters from the son. But they don't really talk about the declaration. And there are events in the declaration that are really not discussed here, as my good colleague has suggested. So I. . . And then they say the remaining evidence. Well, if this is all the evidence they looked at, which is what they've got here, I'm still having a tough time understanding why I shouldn't send it back and be sure they put the declaration involved. Your Honor, because it's a very hard. . . It's a very heavy burden here to establish grounds for a motion to reopen after this court has already found asylum. If we give deference to the Board and we look at Petitioner's motion to reopen that doesn't. . . Petitioner's not any more specific. It's clear that the Board looked at the totality of the evidence. The Board does not have to. . . As the cases say, the Board does not have to write an exegesis and list every incident when the Petitioner doesn't list every incident in his motion to reopen. We give deference to the Board. If we assume the Board has done its regular job, I would. . . I am arguing that the Board did. . . The Board does not abuse its discretion and the Board's decision should be upheld. If I may, I'd like to argue briefly about the 2008 country conditions and about the newspaper articles and the reports that are in the record supporting the motion to reopen. If you look at those documents and read the totality of those documents, for example, if you look at the National Geographic article, what these articles say is that there is Islam. People are. . . It's rising a little bit in Indonesia. But the point of these articles is Sharia law is not going to take over. Of course, it's. . . These are opinion articles. These are newspaper articles in the National Geographic. But they suggest it's moderate Islam is going to prevail in Indonesia. Sharia law is not going to take over because it's such a disparate country. And the New York Times calls it a moderate, easygoing brand of Islam. A more tolerant Islam is confronting extremism. If you look at the totality and read those documents that support the motion to reopen, I just want to point out they don't support Petitioner's argument that Sharia law and extreme Islam is going to take over in Indonesia. What is your best argument, if you have one, that the Petitioner did not exhaust their claim of changed circumstances before the BIA? Well, I don't think I have an argument that they didn't exhaust changed circumstances. All right. So you can see they exhaust. . . They argue changed circumstances in the motion to reopen. It's just not very. . . It's just not. . . It's just they say incidents and they say changed circumstances, and then they quote the law and they don't. . . There's no specific discussion of Sunni or robbery or this or that or anything else. They mention the issue. So the government does not claim they did not exhaust. No. Okay. Thank you, John. Are there no further questions? None. No questions here. Thank you. No, thank you. All right. I think he's over, isn't he? I think we've heard your argument. I think we'll submit the case. Thank you, Counselor. This is Case 10-70951, Kareem v. Holder, which we're now submitting. Judge Gould, would you care for a break? Well, either now or after strike point, whatever you prefer. Why don't we do that now and give you a break? So the Court will be in recess for 10 minutes. All right.
judges: Du, Gould, Smith